Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TERRY ALGRANATI,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**MIDLAND CREDIT MANAGEMENT, INC.,**<br><br>    **Defendant.** | **Civil Action No.: 22-4818 (ES) (AME)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

  On June 29, 2022, Plaintiff Terry Algranati, individually and on behalf of others similarly situated, filed a putative class action complaint in the Superior Court of New Jersey, Hudson County, alleging that Defendant Midland Credit Management, Inc., disclosed Plaintiff's private, personal, and financial information to a third-party vendor whom Defendant had engaged to prepare debt collection letters—without Plaintiff's consent—in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (D.E. No. 1-1, Ex. A ("Complaint" or "Compl.")). On April 26, 2023, the Honorable Andre M. Espinosa, U.S.M.J. issued a Report and Recommendation recommending that this action be remanded, pursuant to 28 U.S.C. § 1447, due to Plaintiff's lack of Article III standing to assert his FDCPA claim and the Court's consequent lack of subject matter jurisdiction. (D.E. No. 15 ("Report and Recommendation" or "R&R")). The Parties had fourteen days to file and serve any objections to the R&R pursuant to Local Civil Rule 72.1(c)(2). On May 10, 2023, Plaintiff filed an objection to the R&R. (D.E. No. 16 ("Plaintiff's Objection" or "Pl. Obj.")). On May 24, 2023, Defendant filed a response to Plaintiff's

Objection. (D.E. No. 17 ("Defendant's Response" or "Def. Resp."))[1]. Having considered the relevant submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiff's Objection is **OVERRULED**, and the Court **ADOPTS**, in full, Judge Espinosa's Report and Recommendation.

I.   **BACKGROUND**

This Court need not recite the facts of this case since they are set forth in Judge Espinosa's Report and Recommendation. (*See* R&R at 2–3). Nevertheless, for completeness, the Court will provide a brief recitation of facts relevant to this Opinion. On June 29, 2022, Plaintiff filed the Complaint, alleging that he was harmed by Defendant's disclosure of his private, personal, and financial information to a third-party vendor whom Defendant had engaged to prepare debt collection letters. (Compl.). Plaintiff asserted five claims based on Defendant's use of the third-party vendor: (i) unconscionable business practices and/or fraud, in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*; (ii) state law negligence; (iii) state law invasion of privacy; (iv) violation of the FDCPA Sections 1692c and 1692d; and (v) declaratory judgment and injunctive relief for Defendant's alleged NJCFA and FDCPA violations. (*Id.*). On July 29, 2022, Defendant removed Plaintiff's action to this Court. (D.E. No. 1).

On August 5, 2022, Plaintiff, without Defendant's consent, moved to stay this action pending the outcome of a motion for consolidation filed in another related matter. (D.E. No. 6). According to Plaintiff, the instant matter was one of more than 30 FDCPA cases removed from state court and was subject to a consolidation motion filed in the oldest case, *Daye v. Allied*

---

[1] Defendant's Response argues that (i) Plaintiff does not have a concrete injury and (ii) none of the cases cited by Plaintiff are applicable here. (Def. Resp.). Because Defendant's Response is in alignment with the R&R, the Court declines to address Defendant's Response.

*Interstate, LLC, et al.*, No. 21-7582.  (*Id.*).  On August 9, 2022, Judge Espinosa issued the following Text Order:

> The Court has considered Plaintiff's request to stay this action (D.E. 6) and rules as follows:  This matter is stayed pending resolution of the motion to consolidate in *Daye v. Allied Interstate*, *LLC*, . . . . Although Defendant does not consent to the stay, the open question of the Court's subject matter jurisdiction, as raised in the *Daye* consolidation motion, must be resolved before this case may proceed.  The parties shall file a joint letter promptly advising the Court upon resolution of the motion to consolidate.  Upon receipt of the letter, the Court will issue an order as to the continued prosecution of this action.

(D.E. No. 6).  Subsequently, "[b]y Opinion and Order entered August 26, 2022, the court in *Daye* concluded that the plaintiff lacked constitutional standing to bring his FDCPA action for failure to establish injury in fact, remanded the action to state court for lack of subject matter jurisdiction, and denied the motion to consolidate as moot."  (R&R at 2–3).  As a result of the court's ruling in *Daye*, the stay in this matter was lifted.  (*Id.* at 3).  Consistent with the Court's independent obligation to ensure that the Court has subject matter jurisdiction at every stage of the case, on March 17, 2023, Judge Espinosa issued, *sua sponte*, an Order To Show Cause to determine whether Plaintiff had Article III standing.  (D.E. No. 12; R&R at 3); *see also Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  The Order To Show Cause directed Defendant to demonstrate why the Court should not remand this action for lack of subject matter jurisdiction as required by Article III of the Constitution.  (D.E. No. 12).  On March 31, 2023, Defendant submitted a response to the Order To Show Cause by memorandum.  (D.E. No. 13).  On April 4, 2023, Plaintiff filed his response to the Order To Show Cause on the docket. (D.E. No. 14).  After a review of the Parties' written submissions, on April 26, 2023, Judge Espinosa filed the R&R at issue. (R&R).  Plaintiff's Objection was filed on May 10, 2023.  (Pl. Obj.).  Defendant's Response was filed on May 24, 2023.  (Def. Resp.).

## II.     LEGAL STANDARD

"Appeals from the orders of magistrate judges are governed by Local Civil Rule 72.1(c)." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-0571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013). The standard of review of a magistrate judge's decision depends on whether the magistrate judge addressed a dispositive or non-dispositive issue. *Id.* When a magistrate judge addresses non-dispositive matters, a magistrate judge has authority to enter an order. Fed. R. Civ. P. 72(a). When a magistrate judge addresses matters that are considered dispositive, a magistrate judge submits a report and recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(c)(2). When a party objects to a report and recommendation, "the district court must make a *de novo* determination of those portions to which the litigant objects." *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013); *see also* 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If the Court overrules the objections, the Court next has an obligation to "give some reasoned consideration to the magistrate's report before adopting it as the decision of the Court." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017).

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. CONST. art. III, § 2. To establish Article III standing to sue, a plaintiff must demonstrate (i) an "injury in fact"; (ii) a "causal connection between the injury and the conduct complained of"; and (iii) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v.*

4

*Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

The first element—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (citing *Spokeo*, 578 U.S. at 338). To allege an injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d. Cir. 2016). A harm is particularized if it affects the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff may not allege a "bare" statutory violation, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (emphasis in original). "If a statutory harm is concrete, no 'additional harm beyond the one Congress has identified' is required." *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626–27 (3d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 342).

"'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340. "Although tangible injuries are perhaps easier to recognize," the Supreme Court has stated that "intangible injuries can nevertheless be concrete," such as, for example, harm resulting from violations of the right to free speech or free exercise. *Id.*; *see also id.* at 342 (noting that the risk of reputational harm associated with libel and slander may be concrete); *Morales*, 859 F. App'x at 626 ("Intangible harms like privacy abuses can be concrete."). Under governing Supreme Court

precedent, "courts must engage in a two-part inquiry when assessing statutory injuries: 'first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law.'" *Ortner v. Equifax Info. Servs., Inc.*, No. 21-2219, 2022 WL 3566623, at *3 (D.N.J. Aug. 18, 2022) (quoting *Rohl v. Pro. Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022)).

### III.     DISCUSSION

In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors" that contributed to, among other concerns, the " invasions of individual privacy." 15 U.S.C. §§ 1692(a), (e).  To achieve the elimination of abusive debt collection practices by debt collectors, the FDCPA prohibits, "without the prior consent of the consumer," debt collectors from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b).  A civil action may be filed by any individual who sustains damages related to a debt collector's violation of the Act. 15 U.S.C. § 1692k.

To assess a statutory injury resulting from a violation of the FDCPA, the Court must first determine whether the "alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law." *Ortner v. Equifax Info. Servs., Inc.*, No. 21-2219, 2022 WL 3566623, at *3 (D.N.J. Aug. 18, 2022) (quoting *Rohl v. Pro. Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022)). "At common law, actionable invasions of privacy are typically categorized into four separate torts: intrusion upon seclusion, appropriation of name or likeness, unreasonable publicity given to another's private life, and false light." *Barclift*, 93 F.4th at 145 (first citing Restatement (Second) of Torts § 652A; and

6

then citing *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023)).

Here, Plaintiff's asserted harm—that the disclosure of his private, personal, and financial information to a third-party vendor engaged by Defendant was a violation of the FDCPA—is most closely related to the recognized intangible common law injury of "unreasonable publicity given to another's private life." Restatement (Second) of Torts § 652A. The Third Circuit has recognized that "[a] defendant is liable under this tort when he 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Barclift*, 93 F.4th at 145 (citing Restatement (Second) of Torts § 652D). Generally, the recognized "harm caused by this tort is 'the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny.'" *Barclift*, 93 F.4th at 145–46 (first citing *Nabozny*, 84 F.4th at 736; and then citing *Jenkins v. Dell Publ'g Co.*, 251 F.2d 447, 450 (3d Cir. 1958) (explaining that privacy torts provide legal relief for "the embarrassment, humiliation[,] or other injury which may result from public disclosure concerning his personality or experiences"). Therefore, "[t]he harm stems from both the offensive character of the information and its disclosure to the public." *Barclift*, 93 F.4th at 146.

In the Third Circuit, "[w]hen the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure." *Barclift*, 93 F.4th at 146 (citations omitted). Therefore, "[i]nformation transmission that neither travels beyond a private intermediary nor creates a sufficient likelihood of external dissemination cannot compare to a traditionally recognized harm that depends on the humiliating effects of public disclosure." *Barclift*, 93 F.4th at 148.

7

Judge Espinosa's Report and Recommendation found that Plaintiff's failure to allege public disclosure of his private information, beyond Defendant's third-party vendor, fails to amount to a common law actionable invasion of privacy. (R&R at 7). As a result, Judge Espinosa concluded that Plaintiff failed to allege a "concrete" injury sufficient to satisfy Article III. (*Id.*).

In response, Plaintiff's Objection presents the Court with three separate arguments. (Pl. Obj.). Plaintiff's first and second arguments are nearly identical. (Pl. Obj. at 5–7 & 8–13). First, Plaintiff argues that the Supreme Court and the Third Circuit have concluded that the disclosure of private information is, by itself, a concrete harm. (*Id.* at 5–7). As a result, Plaintiff relies on this interpretation of relevant case law to support his second argument that the disclosure of Plaintiff's private information constitutes a concrete harm. (*Id.* at 8–13). Plaintiff asserts that the United States Supreme Court in *TransUnion* "expressly stated that 'the disclosure of private information' is 'chief' among the intangible injuries which are 'concrete.'" (*Id.* at 6 (citing *TransUnion*, 141 S. Ct. at 2204)). Additionally, Plaintiff cites three Third Circuit cases, *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021); *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019); and *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351 (3d Cir. 2018), to argue that a concrete harm exists "when a debt collector discloses private information such as an account number or the debt collector's internal reference number for the delinquent account." (Pl. Obj. at 6). Plaintiff, therefore, alleges that Defendant's disclosure of his account number, the names of his creditors, the last four digits of the original creditor's account number, the portal for account information and payment options, the charge-off date, the amount due, and Plaintiff's full name and mailing address are all disclosures of private information that amount to an intangible harm sufficient to establish Article III standing. (*Id.* at 6–7). The Court disagrees. Here, Plaintiff fails to assert any claims that indicate that his private

8

information was disseminated beyond the permissible third-party vendor Defendant obtained. Because Plaintiff has failed to allege that Defendant communicated his personal information beyond Defendant's vendor, Plaintiff has not suffered the kind of privacy harm traditionally associated with public disclosure.

Plaintiff's additional argument also fails. Plaintiff argues that the R&R contains "deficiencies" for several reasons. (Pl. Obj. at 13). First, Plaintiff alleges that the R&R fails to address *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021), *DiNaples v. MRS BPO*, LLC, 934 F.3d 275 (3d Cir. 2019), and *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351 (3d Cir. 2018). (Pl. Obj. at 13). Next, Plaintiff argued that the R&R incorrectly stated the holding in *TransUnion*. (*Id.*). Finally, Plaintiff argued that "the R&R relies on non-binding district court decisions which concluded that the invasion of privacy tort of giving publicity to private facts is not sufficiently analogous to the disclosure of private information by a debt collector to a mail vendor." (*Id.* at 14).

After reviewing Plaintiff's arguments, the Court is not convinced that the R&R fails to address relevant case law or misapplies case law resulting in any deficiencies in the R&R. First, the Third Circuit has clearly indicated that, consistent with *TransUnion*, "when asking whether a plaintiff's intangible injury is "concrete," [the Court] will examine the kind of harm at issue." *Barclift*, 93 F.4th at 145. Here, the R&R clearly examines the kind of harm at issue when finding that "Plaintiff's contention—that the mere invasion of his legally protected interest, as defined by the FDCPA's provision preventing a debt collector from communicating certain information to a third party, constitutes concrete, albeit intangible harm—disregards the Supreme Court's holding that injury in law is not injury in fact." (R&R at 9–10). Once again, the Court notes that in this jurisdiction, binding case law has found that, "harm from disclosures that remain functionally

internal are not closely related to those stemming from public ones." *Barclift*, 93 F.4th at 146. Therefore, "[w]hen the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure." *Id.* Here, Plaintiff's information was provided to Defendant's third-party vendor for the sole purpose of "drafting, printing, addressing, and mailing of [Defendant's] collection letter." (Compl. ¶ 41). This form of communication is insufficient to assert the kind of privacy harm traditionally associated with public disclosure. Therefore, Plaintiff's argument alleging deficiencies in the R&R fails.

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objection and finds itself in substantial agreement with Judge Espinosa's well-reasoned Report and Recommendation. The Court thus **ADOPTS** the Report and Recommendation in full. This action was removed to this Court based on federal question jurisdiction, 28 U.S.C. § 1331. However, because this Court lacks jurisdiction over the sole federal claim and, therefore, lacks subject matter jurisdiction over this action, this case will be remanded to the Superior Court of New Jersey, Hudson County, pursuant to 28 U.S.C. § 1447(c).

**Dated:** July 15, 2024

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**